UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GET JOE'S LLC, CHRISTOPHER RICE, and RICHARD RIDGEWAY, | ) ) ) | Civil Action No.: 4:14-cv-2626-BHH-TER |
| Plaintiff, | ) ) | |
| -vs- | ) ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| HANGOVER JOE'S HOLDING CORPORATION, HANGOVER JOE'S INC., HANGOVER JOE'S PRODUCTS, LLC, MICHAEL ALAN JAYNES, BRIAN DANELS, and SHAWN ADAMSON, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## I.    INTRODUCTION

Plaintiffs originally filed this action in the Court of Common Pleas in Horry County, South Carolina. Defendant Hangover Joe's Holding Corporation (HJHC) removed the action to this court under the provisions of 28 U.S.C. § 1332, § 1441 and § 1446. Presently before the court are Defendant HJHC's Motion to Dismiss and Compel Arbitration (Document # 4) and Plaintiffs' Motion to Remand (Document # 7). At the time this action was removed to this court, Plaintiffs were represented by counsel. However, the district judge entered an Order (Document # 25) granting Plaintiffs' counsel's Motion to Withdraw and the case was automatically referred to the undersigned for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e).

## II.    MOTION TO REMAND

Plaintiffs filed this action in Horry County on April 25, 2014, arising out of an Exclusive National Distributor Agreement. On June 27, 2014, Defendant HJHC removed the action to this

court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. It is undisputed that diversity of citizenship exists among the parties. HJHC asserted that none of the other defendants had made an appearance nor had Plaintiff filed any certificates of service indicating they had been served, and, thus, the consent of the remaining defendant was unnecessary for removal to be proper. See 28 U.S.C. § 1446(b)(2)(A) (consent for removal required only if defendant has been properly joined and served).

HJHC also noted that Plaintiffs sought between $70,000 and $74,999 for each of their first and second causes of action, up to $74,999 for their fourth, sixth, and seventh causes of action, unspecified monetary damages for the third and fifth causes of action, plus prejudgment and post judgment interest and attorney's fees and costs, and, thus, entitlement to a total of $374,995 in damages, not including interest, attorney's fees or costs, or damages associated with the third or fifth causes of action in the Complaint.

Plaintiffs raise two arguments for remand. First, they argue that removal was defective because not all of the served defendants consented to the removal. Next, they argue that Defendant HJHC fails to establish that the jurisdictional amount in controversy requirement has been met. The removing party bears the burden of demonstrating that jurisdiction is proper at the time the petition for removal is filed. Caterpillar Inc. v. Lewis, 519 U.S. 61, 73, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

Plaintiffs argue that Defendants Hangover Joe's Inc. (HJI), Hangover Joe's Products, LLC (HJPL), and Michael Alan Jaynes were all properly served prior to removal and, thus, their consent to removal was necessary pursuant to 28 U.S.C. § 1446(b)(2)(A). Plaintiffs attach to their motion a copy of (1) a return receipt indicating HJI was served by certified mail to its register agent, Vcorp Services, LLC, (2) a return receipt dated May 22, 2014, indicating HJPL was served by certified mail

-2-

to its registered agent United States Corp. Agents, Inc. and (3) a return receipt indicating that a Joe Payne accepted service for Defendant Jaynes. These return receipts reveal that Plaintiff's purported service was not proper on any of these Defendants.[1]

Rule 4(d)(8) of the South Carolina Civil Procedure Rules permits service on certain defendants by certified mail, but only if sent "return receipt requested and delivery restricted to the addressee." Id.; Langley v. Graham, 322 S.C. 428, 431, 472 S.E.2d 259, 261 (S.C. Ct. App. 1996) (service by certified mail defective if restricted delivery not selected); see also S.C. Code § 36-2-806(1)(c) (service on a nonresident defendant under the long arm statute by mail must be made by "certified mail as provided in Rule 4(d)(8) of the South Carolina Rules of Civil Procedure"). Neither the return receipt for HJI nor the return receipt for HJPL indicate that restricted delivery was selected. In addition, the head of the Service of Process Department for Vcorp Services, LLC, Taylor Lolya, declares that Vcorp has no record of being served with process for HJI. Lolya Decl. ¶¶ 3-4 (Ex. 2 to Def. Response). Also, HJPL is no longer in existence as of June 1, 2013. Jaynes Decl. ¶¶ 4 (Ex. 1 to Pl. Resp.); Entity Details Form (Ex. to Jaynes Decl.). Therefore, service on these defendants was not proper and their consent was not necessary to effectuate removal.

In addition, although restricted delivery was selected for Defendant Jaynes, the signature reveals that the documents were not actually delivered to Jaynes, but rather to an individual named Joe Payne. Jaynes avers that the address shown on the return receipt is neither his home nor his work address nor does he even live or work in Colorado, he does not know Joe Payne, the person who accepted delivery, and Jaynes did not otherwise receive any service copy of the summons and complaint. Jaynes Dec. ¶ 5. Thus, Jaynes' consent to the removal was not necessary. As such, this

---

[1] It is undisputed that Defendants Brian Danels and Shawn Adamson had not be served at the time of removal.

argument for remand fails.

Plaintiffs also argue that the amount in controversy requirement for diversity actions under § 1332 has not been met.  In cases in which the district court's jurisdiction is based on diversity of citizenship, the party invoking federal jurisdiction has the burden of proving the jurisdictional requirements for diversity jurisdiction. See Strawn v. AT & T Mobility LLC, 530 F.3d 293, 298 (4th Cir.2008) (holding that in removing case based on diversity jurisdiction, party invoking federal jurisdiction must allege same in notice of removal and, when challenged, demonstrate basis for jurisdiction).  The court should examine the complaint at the time of removal in order to determine the amount in controversy.  Thompson v. Victoria Fire & Cas. Co., 32 F. Supp. 2d 847, 848 (D.S.C. 1999)(citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 292, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("Moreover, the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal."); Hicks v. Universal Housing, Inc., 792 F.Supp. 482, 484 (S.D.W.Va.1992) ("The courts have long held that the question of jurisdictional amount for purposes of removal is controlled by the allegations of plaintiff's complaint as those allegations exist at the time the petition for removal is filed.")).  As to each cause of action asserted in the complaint, Plaintiffs limit the relief sought to no more than $74,999.  In it's notice of removal, Defendant HJHC noted that with each prayer for relief added together, the jurisdictional requirement of $75,000 was met.  Plaintiffs argue that each of their causes of action were pleaded in the alternative and, thus, the relief sought should not have been added together.  However, no where in the complaint do Plaintiffs indicate that they are seeking relief only in the alternative.  Rather, the conjunctives "and/or" or "and" follow each request for monetary relief.  Complaint pp. 10-12. In addition, Plaintiffs also seek interest and attorney's fees or costs.  Therefore, Defendant HJHC has shown that Plaintiff's complaint meets the jurisdictional amount in controversy requirement.

-4-

For these reasons, remand of this properly removed action is not appropriate.

## III.    MOTION TO COMPEL ARBITRATION AND DISMISS

It is undisputed that Plaintiffs and HJHC entered into an Exclusive National Distributor Agreement (the agreement), incorporated by reference into the complaint, on April 28, 2011. Complaint ¶ 22.  The agreement contained the following arbitration provision:

> ARBITRATION & GOVERNING LAW – Should any controversy, claim or dispute arise out of or relating to this Agreement, it shall be settled solely and exclusively by binding arbitration in Cincinnati, Ohio. Such arbitration shall be conducted in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association ("AAA"), with the following exceptions if in conflict: (a) one arbitrator shall be chosen by "AAA"; (b) each party to the arbitration will pay its pro rata share of the expenses and fees of the arbitrator, together with other expenses of the arbitration incurred or approved by the arbitrator; and (c) arbitration may proceed in the absence of any party if written notice (pursuant to the "AAA" rules and regulations) of the proceedings has been given to such party. Each party shall bear its own attorneys fees and expenses. The parties agree to abide by all decisions and awards rendered in such proceedings. Such decisions and awards rendered by the arbitrator shall be final and conclusive. All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity; provided however, that nothing in this subsection shall be construed as precluding the bringing an [sic] action for injunctive relief or other equitable relief. The arbitrator shall not have the right to award punitive damages or speculative damages to either party and shall not have the power to amend this Agreement. The arbitrator shall be required to follow applicable law.

Agreement p.6.  This provision requires that all controversies, claims and disputes arising out of the agreement be settled by binding arbitration.

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., applies to any agreement involving commerce, like here where Plaintiffs allege HJHC "used the instrumentalities of interstate commerce in pursuit of their actions to enter into contracts for distribution."  Complaint ¶ 77.  The FAA "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). While Congress considered the advantage of

expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. <u>Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University</u>, 489 U.S. 468, 478 (1989).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 26 (1991). The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.' " <u>Mitsubishi</u>, 473 U.S. at 625 (citing <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). District courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>United Steelworkers of Am. v. Warrior and Gulf Navigation Co.</u>, 363 U.S. 574, 582-83 (1960).

Plaintiffs have not filed a response to the motion to compel arbitration and, thus, do not dispute the validity of the arbitration provision or that the claims alleged in the complaint fall within it. Further, Plaintiffs' allegations that they were fraudulently induced to enter into the agreement and rescinded the agreement do not render the arbitration clause unenforceable. "As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract ... unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

Because all of Plaintiff's claims are covered by the arbitration agreement, dismissal of this action to pursue arbitration is a proper remedy. <u>Choice Hotels Int'l, Inc. v. BSR Tropicana Resort,</u>

Inc., 252 F.3d 707, 709–10 (4th Cir.2001).  Thus, it is recommended that the motion to compel arbitration be granted and this case be dismissed.

## IV.    CONCLUSION

For the reasons discussed above, it is recommended that Plaintiffs' Motion to Remand (Document # 7) be denied, Defendant HJHC's Motion to Compel Arbitration and Dismiss (Document # 4) be granted and this case be dismissed.[2]


                                          s/Thomas E. Rogers, III
                                          Thomas E. Rogers, III
                                          United States Magistrate Judge

January 13, 2015
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

---

[2]Because this case is subject to mandatory arbitration, all other issues pending before the court are for the abitrator.